Byron CHARLES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9623.

Court of Appeals of Alaska.

Oct. 19, 2012.

Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Petitioner.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### Response to the Supreme Court's Order of January 7, 2009

PER CURIAM.

In a petition for hearing currently pending before the Alaska Supreme Court, Byron Charles challenges his conviction for failing to register as a sex offender as required by Alaska's sex offender registration act, AS 12.63.

(This Court affirmed Charles's conviction on direct appeal. See *Charles v. State*, Alaska App. Memorandum Opinion No. 5277 (Nov. 28, 2007); 2007 WL 4227335.)

After Charles filed his petition for hearing, the supreme court issued its decision in *Doe v. State*, 189 P.3d 999 (Alaska 2008). In *Doe*, the supreme court held that the requirements of the sex offender registration act constitute "punishment" for purposes of the *ex post facto* clause of the Alaska Constitution (Article I, Section 15), and therefore the sex offender registration act can not lawfully be applied to defendants whose offenses predate the effective date of the act (August 10, 1994). *Id.* at 1018–19.

Charles committed his underlying sex offense in the 1980s, before the enactment of the sex offender registration act.[1] The supreme court now confronts the question of whether Charles is entitled to claim the benefit of the decision in *Doe*.

In an order dated January 7, 2009, the supreme court directed us to consider certain questions relating to whether Charles can claim the benefit of *Doe*.

First, the supreme court asks us to address the issue of whether Charles has waived any *ex post facto* challenge to the sex offender registration act—and, if so, whether (as a legal matter) *ex post facto* challenges to a statute are ever waivable.

Second, the supreme court asks us to give our opinion as to whether Alaska should modify the current rule governing the retroactivity of court decisions—the rule announced in *Judd v. State*, 482 P.2d 273 (Alaska 1971)—by adopting the federal principle of retroactivity announced by the United States Supreme Court in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987): the principle that new constitutional rulings should always be applied to all defendants whose convictions are not yet final when the ruling is announced.[2]

---

1. See *Charles v. State*, Alaska App. Memorandum Opinion No. 1600 (April 27, 1988), 1988 WL 1511427, where this Court affirmed (on direct appeal) Charles's conviction for second-degree sexual abuse of a minor.

2. For purposes of this discussion, a criminal conviction is "final" if there is no further possibility of direct appellate review (including discretionary review) of the conviction. See *Beard v. Banks*, 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004); *Caspari v. Bohlen*, 510

Finally, the supreme court asks for our opinion as to whether Charles's conviction for failure to register as a sex offender should be set aside under the *Griffith* principle of retroactivity.

Because the supreme court has directed us to consider these questions but has not entered a final order with respect to Charles's petition for hearing, we do not interpret the supreme court's order as giving this Court jurisdiction to independently decide these issues. Rather, we believe that the supreme court has merely interrupted its own consideration of Charles's case to seek our input and recommendations on these issues.

Given the importance of these legal issues, not only for Charles's case but for future cases as well, we asked the parties to file supplemental briefs on the questions posed by the supreme court, and we thank the parties for their thoughtful input.

Because the supreme court has not asked us to decide these issues, but rather to offer our analysis and advice, we have not written this response the way we would normally craft a judicial opinion. Rather, our response is more in the nature of a memorandum: we discuss the existing law, we discuss how that law might apply to the issues potentially raised in Charles's case, and we discuss why the supreme court might not need to resolve all of these legal issues in Charles's case.

*Has Charles waived or forfeited any ex post facto claim?*

The question of whether a person has "waived" a constitutional right is somewhat ambiguous, because courts speak of waiver in two different contexts. On the one hand, a person can "waive" a right by knowingly choosing to relinquish that right, or by knowingly choosing not to exercise that right. On the other hand, courts often use the term "waiver" when they refer to a person's *forfeiture* of a right by failing to exercise or claim the benefit of that right—even when the person has made no conscious decision to forego the right, and has simply neglected to assert it.

As the State concedes, there is nothing in the record of this case to suggest that Charles has ever knowingly chosen to forego his rights under the *ex post facto* clause. Thus, there is no need to address the question of whether *ex post facto* rights are "waivable" in this sense—*i.e.*, no need to decide whether the law might allow a defendant to knowingly choose to forego the protections of the *ex post facto* clause.

We note, however, that there are potentially instances where it might be to a defendant's advantage to waive *ex post facto* rights. For instance, in the present case, Charles was charged with "failure to register" as a sex offender even though, as a factual matter, he *did* register. The problem was that he supplied a false address when he registered. *See Charles v. State*, 2007 WL 4227335 at *1.

The State charged Charles with a class A misdemeanor under AS 11.56.840(a)(2). But under these circumstances, the State might conceivably have charged Charles with a more serious crime. Under AS 12.63.010(e), the registration forms required by Alaska's sex offender registration act "must be sworn to by the offender ... and [must] contain an admonition that a false statement shall subject the offender ... to prosecution for perjury."

Perjury is a class B felony.[3] We can imagine that a defendant in Charles's position might wish to forego their *ex post facto* defense to the misdemeanor charge of "failure to register" in exchange for the government's promise not to pursue a perjury prosecution. For this reason, we believe it would be inadvisable to rule that a defendant can never voluntarily relinquish the protections afforded by the *ex post facto* clause.

(We note that this Court has already ruled that a defendant may knowingly relinquish

---

U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Smart v. State*, 146 P.3d 15, 17 (Alaska App.2006), *reversed on other grounds* in *State v. Smart*, 202 P.3d 1130 (Alaska 2009).

**3.** AS 11.56.200(c).

the protections of the double jeopardy clause.[4])

This leaves the issue of whether Charles may have forfeited his potential *ex post facto* defense by failing to assert it until now.

Several federal and state courts have ruled that *ex post facto* protections can be forfeited by failing to assert them.[5] Texas, however, has ruled that *ex post facto* protections can be neither waived nor forfeited, because the *ex post facto* clause is "a categorical prohibition directed by the people against their government".[6] The Texas Court of Criminal Appeals reasoned that defendants should not be permitted to waive the protections of the *ex post facto* clause "any more than they may consent to be imprisoned for conduct which is not a crime." [7]

However, even in jurisdictions where *ex post facto* protections are forfeited by inaction, the fact that a defendant has forfeited an *ex post facto* claim by failing to raise the claim in the trial court does not mean that the defendant is completely barred from seeking relief. Appellate courts that apply a rule of forfeiture to an unpreserved *ex post facto* claim generally still allow a defendant to litigate the claim on appeal under the rubric of "plain error" or "manifest injustice".[8]

■ We ourselves have repeatedly applied the plain error rule to claims of constitutional error that were not properly preserved in the trial court proceedings-most recently, in a

series of sentencing cases arising from the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

In *Blakely*, the Supreme Court held that defendants are entitled to a jury trial, and entitled to demand proof beyond a reasonable doubt, on any issue of fact which, if found in the government's favor, would increase the maximum sentence for their crime. Because *Blakely* announced a new rule of federal constitutional law, *Griffith v. Kentucky* governed the retroactive application of *Blakely*. In other words, any defendant whose conviction was not yet final (*i.e.*, was still on direct review) at the time *Blakely* was decided could retroactively claim the benefit of *Blakely*.

But even though any defendant whose appeal was still pending could retroactively claim the benefit of *Blakely*, this Court repeatedly held that defendants who failed to preserve a *Blakely* claim in the trial court had to demonstrate not only that *Blakely* was violated in their case, but also that the *Blakely* violation amounted to plain error.[9]

■ This use of the phrase "plain error" actually refers to a concept that is somewhat different from what courts normally mean when they say "plain error". A claim of plain error typically includes an assertion that the lower court overlooked, or failed to remedy, an error that would have been obvious to any competent judge.[10] But when a

**4.** *See Dutton v. State,* 970 P.2d 925, 931–32 (Alaska App.1999).

**5.** *See United States v. Diaz–Diaz,* 327 F.3d 410, 412 (5th Cir.2003); *State v. Simnick,* 279 Neb. 499, 779 N.W.2d 335, 339 (2010); *State v. LaFreniere,* 342 Mont. 309, 180 P.3d 1161, 1163–64 (2008); *Mayers v. State,* 42 So.3d 33, 44 (Miss. App.2010); *Williams v. State,* 507 So.2d 1171, 1171 (Fla.App.1987). *But see United States v. Groves,* 369 F.3d 1178, 1182 (10th Cir.2004) (holding that the defendant was entitled to challenge his sentence on *ex post facto* grounds, even though he pleaded guilty, because he did not agree to a specific sentence, and because he reserved the right to appeal any "illegal sentence" that might be imposed).

**6.** *Ieppert v. State,* 908 S.W.2d 217, 220 (Tex. Crim.App.1995).

**7.** *Ibid.*

**8.** *See United States v. Diaz–Diaz,* 327 F.3d at 412; *State v. Simnick,* 779 N.W.2d at 339–340; *Mayers v. State,* 42 So.3d at 44–45; *United States v. Jones,* 899 F.2d 1097, 1103 (11th Cir.1990) (holding that failure to raise an *ex post facto* objection will preclude consideration of the point on appeal absent manifest injustice).

**9.** *See Twogood v. State,* 223 P.3d 641, 651 (Alaska App.2010); *Malutin v. State,* 198 P.3d 1177, 1184 (Alaska App.2009); *Lockuk v. State,* 153 P.3d 1012, 1017–18 (Alaska App.2007); *McDole v. State,* 121 P.3d 166, 170 (Alaska App.2005); *Haag v. State,* 117 P.3d 775, 783 (Alaska App. 2005).

**10.** *See, e.g., Adams v. State,* 261 P.3d 758, 773 (Alaska 2011).

claim of error rests on the retroactive application of a new constitutional rule, no one can say that the trial court judge failed to perceive an obvious error—because, at the time of the lower court proceedings, the law was different.

In such cases, the notion of "plain error" is retrospective. The question is whether, in light of the new constitutional rule, we can *now* see that there was an obvious flaw in the lower court proceedings, and that failure to correct this flaw would perpetuate manifest injustice.

Thus, for instance, this Court repeatedly held that even though a defendant was wrongfully deprived of a jury trial on an aggravating factor that increased the permissible maximum sentence for the defendant's crime, this *Blakely* violation did not constitute plain error when the evidence concerning the existence of the aggravator was not subject to reasonable dispute—in other words, when there was no reasonable possibility that a jury would have found in the defendant's favor even if the issue had been submitted to a jury.[11]

█ In the present case, even though the State argues that Charles has forfeited his *ex post facto* claim by failing to raise an *ex post facto* argument in the trial court, the State acknowledges that Charles may still pursue his *ex post facto* claim under the rubric of plain error—and that Charles would be entitled to relief if he can show that there was a "clear" violation "of [his] substantial rights" that prejudiced "the [fundamental] justice or integrity of the proceedings".

It is undisputed that Charles committed his underlying sex offense before the legislature enacted Alaska's sex offender registration law. Thus, even though Charles failed to raise an *ex post facto* objection in the trial court, he would nevertheless be entitled to relief from his failure-to-register conviction if (1) the supreme court's decision in *Doe* applies retroactively to Charles, and if (2) the

prosecution of Charles for failure to register as a sex offender, in violation of the *ex post facto* clause, amounts to "plain error"—that is, if the *ex post facto* violation was "so prejudicial to the fairness of the proceedings that ... failure to correct it would perpetuate manifest injustice." [12]

*The State's arguments that there is no plain error in Charles's case because (1) Doe was wrongly decided, or (2) Doe is not binding precedent*

Before proceeding further, we must address two arguments that the State raises. Both of these arguments are aimed at showing that, regardless of the law pertaining to retroactivity, Charles is not entitled to relief.

First, the State argues that *Doe* was wrongly decided.

Second, the State argues that, even if *Doe* was correctly decided, it is not "precedent"—that is, it does not establish a rule of decision for other cases—because only three members of the supreme court participated in *Doe* (a bare quorum under Appellate Rule 105(a)), and because *Doe* was decided by a two-to-one vote.

The State relies on Appellate Rule 106(b), which was enacted by the supreme court in the summer of 2011, three years after the court issued its decision in *Doe*.[13] Under Rule 106(b), a two-to-one decision of the supreme court applies only to the resolution of that particular appeal, "and [does] not have precedential effect".

The State argues that Appellate Rule 106(b) has retroactive effect—that the enactment of this rule stripped *Doe* of its status as binding precedent. Accordingly, the State argues that, regardless of the law governing the retroactivity of court decisions, neither Charles nor any other defendant is entitled to relief based on *Doe*.

For two reasons, we decline to address the State's arguments.

---

**11.** *See, e.g., Active v. State,* 153 P.3d 355, 367 (Alaska App.2007); *Milligrock v. State,* 118 P.3d 11, 17 (Alaska App.2005).

**12.** *Adams v. State,* 261 P.3d 758, 764 (Alaska 2011).

**13.** *See* Supreme Court Order No. 1759 (both dated and effective July 21, 2011).

■ First, these issues fall outside the scope of the questions presented to us in the supreme court's order of January 7, 2009. Indeed, with regard to the State's argument based on Appellate Rule 106(b), we note that the supreme court's directive to this Court was issued two and a half years before the supreme court enacted Appellate Rule 106(b).

Second, because Charles's case is still pending before the supreme court, and because the supreme court is about to resume active consideration of Charles's case, it seems to us that there would be little value in having this Court offer an opinion on the underlying merits of the decision in *Doe,* or in having this Court try to assess how the supreme court would interpret Appellate Rule 106(b) as it relates to *Doe.*

(Compare AS 22.05.015(b), which authorizes this Court to ask the supreme court to assume jurisdiction of a case that would normally be within this Court's jurisdiction if "the case involves ... an issue of substantial public interest that should be determined by the supreme court.")

We now return to the issues raised in the supreme court's order.

*Should Alaska adopt the retroactivity rule set forth in Griffith v. Kentucky?*

The supreme court has asked for our opinion as to whether Alaska should modify our current rule governing the retroactivity of court decisions—the rule announced in *Judd v. State,* 482 P.2d 273 (Alaska 1971)—by adopting the federal principle of retroactivity announced by the United States Supreme Court in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Under the current *Judd* rule, the issue of retroactivity is assessed by weighing three factors: (1) the purpose to be served by the new rule; (2) the extent to which law enforcement authorities have relied on the old rule; and (3) the degree to which retroactive application of the new rule would disrupt the

administration of justice.[14] Under *Griffith,* on the other hand, any new constitutional rule must be applied to all defendants whose convictions are still on direct review at the time the rule was announced.[15]

Charles's supplemental brief to this Court contains a lengthy discussion of the problems and potential injustices created by the *Judd* rule, and the benefits of the *Griffith* rule. The State agrees that "there may be reasons for rejecting the ... *Judd* standard."

However, as we explain in the next section of this response, we conclude that our supreme court's decision in *Doe* must be applied retroactively to Charles under *either* Alaska's current *Judd* rule of retroactivity or the *Griffith* rule of retroactivity. We therefore conclude that there is no immediate need for the supreme court to decide whether to adopt the *Griffith* principle of retroactivity.

Although all members of this Court agree that there is no need to decide this question of retroactivity law, Judge Coats has written a concurring opinion in which he discusses the perceived advantages of the *Judd* rule over the *Griffith* rule. For this reason, we (the other two members of this Court) believe that it is worthwhile to mention the policies that led the United States Supreme Court to adopt the *Griffith* rule.

Initially, the federal test for retroactivity was the same as our *Judd* test—because the *Judd* rule of retroactivity was taken directly from the rule formulated by the United States Supreme Court in *Linkletter v. Walker,* 381 U.S. 618, 636, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965), and reiterated two years later in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). As we have explained, under this test, the retroactivity of a court decision is assessed by weighing the purpose of the new rule, the degree to which people reasonably relied on the old rule, and the degree to which retroac-

---

14. *Judd v. State,* 482 P.2d 273, 278 (Alaska 1971) (adopting the retroactivity standard formerly employed by the federal courts under *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

15. *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716.

tive application of the new rule would disrupt the administration of justice.

Originally, the *Linkletter/Stovall* rule of retroactivity applied equally to defendants whose convictions were still being challenged on direct review when the new rule was announced, and to defendants whose convictions had already become final.[16] But in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court reconsidered this unified approach to retroactivity and declared that different policies should govern the assessment of whether a new rule should apply retroactively to defendants whose convictions were not yet final when the decision was announced. *Id.*, 457 U.S. at 548, 102 S.Ct. at 2586.

In particular, the Supreme Court adopted the view that, after a new rule has been announced in one defendant's case, that same rule must be applied to any "similarly situated defendant" whose conviction is not yet final unless there is "a principled reason for acting differently." *Id.*, 457 U.S. at 561–62, 102 S.Ct. at 2593.[17]

In its *Johnson* decision, the Supreme Court allowed one major exception to this principle that new rules should be applied retroactively to all defendants whose cases were currently pending on direct review at the time the rule was announced: the Supreme Court declared that a new rule would not be applied retroactively if the new rule constituted a "clear break" from the Court's past precedents. *Id.*, 457 U.S. at 549–550, 102 S.Ct. at 2586–2587.

But five years later, in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court abandoned this "clear break" exception and declared that *all* new rules would apply retroactively to defendants whose convictions were not yet final when the new rule was announced.

In *Griffith*, the Supreme Court concluded that it was fundamentally unfair to "fish[ ]

one case from the stream of appellate review" and employ that case "as a vehicle for announcing new constitutional standards", but then refuse to apply the new standards to all the other defendants who were waiting for their appeals to be heard. *Id.*, 479 U.S. at 323, 107 S.Ct. at 713. The Court concluded that a refusal to apply the new rule to all defendants whose convictions were not yet final would create an unacceptable inequity—because one defendant (the defendant whose case was chosen by the appellate court as a vehicle for announcing the new rule) would be the "chance beneficiary" of the new rule, while all other similarly situated defendants would see their same claims denied. 479 U.S. at 323 & 327, 107 S.Ct. at 713 & 715.

The Supreme Court acknowledged that, when a new rule constitutes a "clear break" from earlier precedent, the second and third *Linkletter* factors—reasonable reliance on the old rule, and the probable adverse effect on the administration of justice—were likely to weigh heavily against retroactive application. *Griffith*, 479 U.S. at 326–27, 107 S.Ct. at 715. Nevertheless, the Court concluded that, even in such instances, it was unacceptably unfair to fail to apply a new rule retroactively to all defendants whose cases were still on direct appeal. *Id.*, 479 U.S. at 327–28, 107 S.Ct. at 715–16.

We acknowledge that almost *any* rule of limited retroactivity carries the seeds of arbitrariness and unfairness. For instance, *Griffith* declares that there is one rule of retroactivity for defendants who are still seeking appellate review of their convictions when a new rule is announced, and another rule of retroactivity for defendants whose convictions are already final when the new rule is announced. This means that an appellate court is required to apply the new rule retroactively to all defendants who are still waiting for the decision of their petition for hearing (in our state court system) or their petition for *certiorari* (in the federal system), but to deny retroactive application to defendants whose petitions for discretion-

---

16. *See Johnson v. New Jersey*, 384 U.S. 719, 732, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966); *Stovall v. Denno*, 388 U.S. at 300, 87 S.Ct. at 1971.

17. Quoting Justice Harlan's dissenting opinion in *Desist v. United States*, 394 U.S. 244, 258, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248 (1969).

ary review were denied just a few days earlier.

Moreover, in the case of new rules that are a "clear break" from earlier precedent, the *Griffith* rule means that some defendants will be denied relief because (1) they raised the same claim on direct appeal but lost, and then (2) they failed to pursue a petition for discretionary review after their attorney advised them—competently—that they had little or no chance of prevailing on such a claim.

As we explained earlier, we conclude that Charles's case does not require our supreme court to decide whether to adopt the *Griffith* rule of retroactivity—because Charles is entitled to retroactive application of the *Doe* decision regardless of whether our supreme court applies the *Griffith* rule or the current *Judd* rule. We have presented this extensive examination of *Griffith,* not in an effort to convince our supreme court to adopt the *Griffith* rule of retroactivity, but rather to elucidate the scope of the *Griffith* rule and the policies behind it, so as to round out the thoughtful views expressed by Judge Coats in his concurrence.

We additionally note—for purposes of clarification—that even if Alaska adopted the *Griffith* rule, this would not necessarily entail a complete abrogation of Alaska's current *Judd* rule of retroactivity.

Under *Griffith,* a new rule applies retroactively to defendants whose convictions are not yet final at the time the new rule is announced. But *Griffith* does not answer the question of whether a new rule should be applied retroactively to defendants whose convictions *are* already final when the new rule is announced.

Under federal law, this latter situation is governed by the rule of retroactivity announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under *Teague,* a new rule will be applied completely retroactively (that is, even to defendants whose convictions are already final) only if the new rule is a rule of *substantive* law (*i.e.,* a rule that limits the authority of the government to prosecute or punish certain conduct), or if the new rule is a "watershed" *procedur-*al rule that implicates the fundamental fairness of the criminal proceeding or the fundamental accuracy of the fact-finding process.

The scope of the *Teague* retroactivity rule is explained in *Smart v. State* (*Smart I* ), 146 P.3d 15 (Alaska App.2006):

> Under … *Teague,* a [judicial] decision creates a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government." [*Teague,* 489 U.S. at 301, 109 S.Ct. at 1070.] When the [judicial] opinion creates a new rule, the rule applies to previously final judgments only in limited circumstances. For example, new substantive rules which decriminalize a class of conduct or prohibit capital punishment for a class of defendants generally apply [completely] retroactively. These new substantive rules apply retroactively because there is a risk that the defendant was convicted for an act that is not criminal or [that the defendant] faces a punishment that is not allowed by law. However, new procedural rules generally do not apply retroactively. New procedural rules merely raise the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, [the courts] give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.

*Smart I,* 146 P.3d at 40 (concurring opinion of Judge Stewart) (omitting several footnotes that cite, or quote from, the United States Supreme Court's decision in *Schriro v. Summerlin,* 542 U.S. 348, 351–52, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004)).

But the states are not required to follow the *Teague* rule of retroactivity, so long as their rules of retroactivity are at least as protective of defendants' federal rights as the *Teague* rule.[18] And Alaska law is currently unsettled as to what rule of retroactivity governs situations where a defendant's conviction is already final when a new rule is announced.

**18.** *See Danforth v. Minnesota,* 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).

The *Judd* rule is the Alaska Supreme Court's last pronouncement on this question, and this is the rule that the supreme court applied in *State v. Smart* (*Smart II*), 202 P.3d 1130, 1138–39 (Alaska 2009), its most recent decision addressing the question of retroactivity.

However, AS 12.72.010(7)—a portion of the statute governing the scope of post-conviction relief in Alaska—contains a different set of rules that govern the retroactivity of judicial decisions when these decisions are invoked for the purpose of collaterally attacking a criminal conviction that is already final. In prior appellate litigation, the State has taken the position that AS 12.72.010(7) was intended to codify the *Teague* rule of retroactivity, and thus the *Teague* test is the governing rule of retroactivity for post-conviction relief litigation in Alaska.[19]

As this Court noted in *Smart I*, 146 P.3d at 29, the conflict between the *Judd* rule and the provisions of AS 12.72.010(7) potentially raises a question under the doctrine of separation of powers: specifically, whether the legislature's enactment of rules governing the retroactivity of judicial decisions improperly encroaches on a matter entrusted to the judicial branch. However, there is no need to resolve this question, because it is moot under the facts of Charles's case—since Charles's conviction is not yet final.

We do note, however, that the Alaska Supreme Court has declared that the *Judd* rule of retroactivity is at least as protective of defendant's rights as the *Teague* rule. This issue came up in *Smart II*.

The primary question presented in *Smart II* was whether the right to jury trial announced in *Blakely v. Washington* should be applied retroactively to defendants whose convictions were already final when *Blakely* was decided. Our supreme court recognized that, because *Blakely* announced a new rule of federal law (an expansion of the scope of the Sixth Amendment right to jury trial),

state courts were obliged to make *Blakely* retroactive at least to the extent guaranteed by the *Teague* test.[20]

But rather than adopting the *Teague* test as the standard for retroactivity under Alaska law, the supreme court adhered to the *Judd* test. The supreme court was able to do this because the court declared that the *Judd* rule of retroactivity was at least as protective of defendants' rights as the *Teague* test. *Smart II*, 202 P.3d at 1138–39.

*Why we conclude that Charles is entitled to retroactive application of the Doe decision under the Judd rule of retroactivity as well as the Griffith rule of retroactivity*

■ Under the *Griffith* rule of retroactivity, constitutional decisions must be applied retroactively to all defendants whose convictions are not yet final at the time the decision is announced. Although this Court had already affirmed Charles's conviction on direct appeal when the Alaska Supreme Court announced its decision in *Doe*, Charles was still in the process of petitioning the supreme court to review this Court's affirmance of his conviction. Thus, Charles's conviction was not yet final when the supreme court issued its decision in *Doe*.[21] Under the *Griffith* rule, it is clear that Charles would be entitled to retroactive application of the *Doe* decision.

Although the question of retroactivity is more complicated under the *Judd* test, the result is the same. As we are about to explain, the *Doe* decision would be given full retroactivity under the *Teague* test (if the *Doe* decision rested on federal law). And because, in *Smart II*, our supreme court declared that the *Judd* test was at least as protective of defendants' rights as the *Teague* test, it follows that *Doe* should receive full retroactivity under *Judd*.

To back up a bit: The *Judd* test for deciding whether a new rule should be applied retroactively involves the weighing of three

---

**19.** *See Smart v. State* (*Smart I*), 146 P.3d at 29; *State v. Smart* (*Smart II*), 202 P.3d at 1148.

**20.** *Smart II*, 202 P.3d at 1136: "[The United States Supreme Court's decision in] *Danforth* [*v. Minnesota*] allows us to apply either the *Teague* test ... or a state constitutional test[,] so long as

the state test is at least as comprehensive as the [*Teague*] test."

**21.** *See* Alaska Appellate Rules 507(b) and 512(a)(2). *And see* footnote 6 of *Griffith v. Kentucky*, 479 U.S. at 321, 107 S.Ct. at 712.

factors: (1) the purpose to be served by the new rule; (2) the extent to which law enforcement authorities have relied on the old rule; and (3) the disruptive effect that retroactive application of the new rule would have on the administration of justice.[22]

However, our supreme court has declared that the first *Judd* factor—the purpose to be served by the new rule—will take precedence over the other two factors, and will require retroactive application of a new constitutional rule, if the primary purpose of the new rule is to enhance the truth-finding function of criminal trials, thus helping to ensure fair and accurate verdicts. *Rutherford v. State,* 486 P.2d 946, 952–53 (Alaska 1971).

The new rule at issue in the present case—the *Doe* court's pronouncement that sex offender registration is a "punishment" for purposes of Alaska's *ex post facto* clause—is not a rule that enhances the truth-finding function of criminal trials. However, the *Doe* rule is likewise aimed at protecting defendants from unjust conviction and punishment.

Under our tripartite system of government, it is the legislative branch that defines crimes and establishes the punishments for those crimes.[23] The Alaska Supreme Court has explicitly recognized this principle:

> Save only as limited by constitutional safeguards, the legislature may choose any reasonable means to protect the people from the violation of criminal laws. In general, the comparative gravity of offenses and their classification and resultant punishment is for legislative determination.

*Alex v. State,* 484 P.2d 677, 685 (Alaska 1971) (citation omitted).

■ But the *ex post facto* clause is one of the constitutional safeguards that limits the legislature's authority in this area. With respect to criminal punishments, the *ex post facto* clause strictly forbids the legislature

from "impos[ing a] punishment more severe than the punishment [that was] assigned by law [to the offense] when the [defendant committed the] act to be punished". *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981), quoted with approval in *State v. Creekpaum,* 753 P.2d 1139, 1141 (Alaska 1988).

■ As explained in *Weaver* and in *Creekpaum,* the constitutional prohibition on *ex post facto* punishments is not premised on an individual defendant's right to a lesser punishment. Rather, the *ex post facto* clause is a restraint on the authority of the legislature itself: the legislature is forbidden from "increas[ing] punishment beyond what was prescribed when the crime was consummated." *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965; *Creekpaum,* 753 P.2d at 1141.

Because the Alaska Supreme Court, in *Doe,* declared that sex offender registration is a "punishment" for *ex post facto* purposes, it necessarily follows that it is unjust—in a fundamental, constitutional sense—to impose that punishment on any defendant whose offense predates the enactment of the sex offender registration law. Accordingly, this appears to be the type of situation where the first *Judd* factor takes precedence over other considerations and demands retroactive application of *Doe.*

Moreover, even if we applied the presumedly more restrictive federal test for retroactivity announced in *Teague v. Lane,*[24] our supreme court's decision in *Doe* would be given complete retroactive effect.

The *Teague* rule of retroactivity is premised on the principle that if a criminal conviction has become final, and if the litigation of that criminal case took place in compliance with the law that was in existence at the time, then there should be very few circumstances which compel a re-examination of the criminal judgement based on new developments in constitutional law.[25] Under *Teague,*

---

**22.** *Judd v. State,* 482 P.2d 273, 278 (Alaska 1971) (adopting the retroactivity standard formerly employed by the federal courts under *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

**23.** *See Malloy v. State,* 1 P.3d 1266, 1282 (Alaska App.2000).

**24.** 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**25.** *Smart v. State,* 146 P.3d at 20–21.

a retroactive attack on a final criminal judgement is allowed only if (1) the new constitutional rule is a substantive rule that "[puts] certain kinds of primary, private individual conduct beyond the power of [the states to regulate through criminal legislation]", or if (2) the new constitutional rule is a "watershed" procedural rule that "requires the observance of ... procedures that are implicit in the concept of ordered liberty".[26]

But even under the restrictions of the *Teague* test, our supreme court's decision in *Doe* qualifies for retroactive application.

By holding that sex offender registration is "punishment" for *ex post facto* purposes, our supreme court held that the legislature had no authority to order sex offenders to comply with the registration requirements if their underlying offenses predated the enactment of the law. This constitutional ruling falls within *Teague*'s first prong: a new constitutional rule that puts certain kinds of conduct beyond the power of the legislature to regulate through criminal legislation.

The United States Supreme Court addressed this issue in *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004):

> New substantive rules generally apply retroactively [under the *Teague* test]. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish.... Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.

*Summerlin*, 542 U.S. at 351–52, 124 S.Ct. at 2522–23 (citations, internal quotations, and a footnote omitted).

*See United States v. Dashney*, 52 F.3d 298, 299 (10th Cir.1995) (holding that, under *Teague*, a defendant could seek retroactive application of a new judicial interpretation of

a criminal statute that altered the generally accepted elements of the crime); *United States v. Shelton*, 848 F.2d 1485, 1488–1490 (10th Cir.1988) (*en banc*) (holding that, under *Teague*, a defendant was entitled to retroactive application of a substantive (but non-constitutional) decision concerning the reach of a federal statute); *Ingber v. Enzor*, 841 F.2d 450, 453–54 (2nd Cir.1988) (same); *Magnuson v. United States*, 861 F.2d 166, 167 (7th Cir.1988) (same); *Webster v. Woodford*, 369 F.3d 1062, 1068–69 (9th Cir.2004) (holding that, under *Teague*, a defendant could pursue a due process/ *ex post facto* challenge to a new and expanded judicial interpretation of a sentencing statute).

The fact that our supreme court's decision in *Doe* qualifies for retroactive application under the *Teague* test means that *Doe* qualifies for retroactive application under the *Judd* test—because, in *Smart II*, 202 P.3d at 1138–39, our supreme court declared that the *Judd* rule of retroactivity was to be construed as being at least as protective of defendants' rights as the *Teague* test.

Thus, even under Alaska's current rule of retroactivity (the *Judd* test), Charles is entitled to retroactive application of *Doe*. Accordingly, even though the *Griffith* rule of retroactivity has much to recommend it, we conclude that the resolution of Charles's case does not require the supreme court to decide whether to adopt the *Griffith* rule.

*If the ex post facto clause bars retrospective application of a criminal statute to a defendant, does convicting a defendant for violating that statute constitute "plain error"?*

■ Even though we conclude that Charles is entitled to retroactive application of the *Doe* decision, the fact remains that Charles did not raise an *ex post facto* argument during his trial court proceedings, so he is not entitled to relief unless he demonstrates plain error. That is, Charles must show that the *ex post facto* error in his case was "so prejudicial to the fairness of the

---

**26.** *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (quoting Justice Harlan's concurring and dissenting opinion in *Mackey v. United States*, 401 U.S. 667, 692–93, 91 S.Ct. 1171, 1180, 28 L.Ed.2d 404 (1971)).

proceedings that ... failure to correct it would perpetuate manifest injustice." [27]

It is undisputed that Charles's underlying sex offense was committed before the sex offender registration act took effect. Thus, Charles stands convicted of violating a criminal statute which, under our state constitution, can not apply to him. This is a manifest injustice.

The record does not suggest that Charles had any tactical reason for deliberately withholding an *ex post facto* challenge to his prosecution and conviction. Accordingly, we conclude that Charles has shown plain error.

*See Mayers v. State*, 42 So.3d 33, 44–45 (Miss.App.2010) (holding that a conviction in violation of the *ex post facto* clause is plain error); *State v. Clemons*, unpublished, 2011 WL 861847, *4 (Ohio App.2011) (same); *People v. Barnes*, unpublished, 2010 WL 4970759, *4 (Mich.App.2010) (holding that imposition of increased punishment in violation of the *ex post facto* clause is plain error); *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335, 342 (2010) (same); *State v. Houston*, unpublished, 2009 WL 130189, *8 (Tenn. Crim.App.2009) (same).

### Conclusion

For the reasons explained here, we recommend that the supreme court grant relief to Charles on the basis of the court's decision in *Doe*. The Clerk of the Appellate Courts is directed to transmit this response to the supreme court.

COATS, Chief Judge, concurring.

COATS, Chief Judge, concurring.

I agree with my colleagues that it is not necessary for the Alaska Supreme Court to decide in this case whether to adopt the rule of retroactivity announced by the United States Supreme Court in *Griffith v. Kentucky*.[1] For the reasons explained in the majority opinion, our Supreme Court's decision in *Doe v. State*[2] applies retroactively under any of the three potential rules of retroactivity: the *Griffith* rule, the *Judd* rule, or the *Teague* rule.

The very fact that there is no present need to decide whether to adopt the *Griffith* rule is a strong reason *not* to decide this issue. In my view, the parties to a case do a better job of briefing, and an appellate court does a better job of deciding, when the issue to be decided is important to the proper resolution of the case. Easy cases, as well as hard cases, create the risk of making bad law.

Moreover, there are reasons to favor our current rule of retroactivity—the *Judd* rule—over the rule announced in *Griffith*. One strong argument in favor of *Judd* is that *Judd* allows a court to weigh various factors in deciding the extent to apply a new rule retroactively. And there may be cases in which the retroactive application of a new rule could have a negative impact on law enforcement and the administration of justice. For instance, in *State v. Glass*,[3] the Alaska Supreme Court, applying the *Judd* test, held that the new rule requiring the police to obtain a warrant before monitoring or recording a conversation would apply prospectively—only to those cases where the monitoring or recording took place after the Supreme Court announced the new warrant requirement.

There is something to be said for retaining the flexibility of the retroactivity rule in *Judd*, which allows the court to determine retroactivity on a case-by-case basis, weighing the impact of a new rule of law. In *Glass*, the Supreme Court concluded that law enforcement officials had reasonably relied on pre-*Glass* law, that they could not have been expected to foresee the *Glass* decision, and that their actions "were entirely reasonable and in good faith." [4] The court concluded that "[i]f the rule in *Glass* were given complete retroactivity so that it would apply to cases already completed, the negative ef-

---

**27.** *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

**1.** 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

**2.** 189 P.3d 999 (Alaska 2008).

**3.** 596 P.2d 10 (Alaska 1979).

**4.** *Glass*, 596 P.2d at 14.

fect on the administration of justice would be substantial." [5] The court noted that, if the *Glass* rule were applied retroactively, it would impact a number of cases.[6] Many of the cases could have involved serious crimes and would have been harder to prove without the tape recorded conversations.

The court reasoned that where the police and prosecuting agencies have reasonably relied upon previously established law, retroactive application of a new rule of law ran the risk of creating disrespect for the legal system:

> Practical problems arise from the undisputed fact that the police, prosecuting agencies and the public have relied upon the previous statements of the law, and that the great impact of and respect for the law in our society is based on such acceptance by the public generally. A change for the future can be digested but the application of a new interpretation to past conduct which was accepted by previous judicial decisions leads us to confusion and a hesitancy to accept any theory except one of gamesmanship with corresponding disrespect for our whole system of laws.[7]

There is a strong argument that the Supreme Court was correct when it decided to limit the retroactivity of the new rule in *State v. Glass. Judd* enabled the court to have the flexibility to consider the impact of its decision on the administration of justice to reach a just result. The principle of retroactivity announced by the United States Supreme Court in *Griffith v. Kentucky* would not have allowed the Alaska Supreme Court to weigh the impact of its decision as it was able to do by applying the rule in *Judd.* There is a considerable risk in abandoning the flexibility of the *Judd* retroactivity rule, and the court should not lightly abandon that decision, particularly in a case which does not require reaching that issue.

---

5. *Id.* (citations omitted).

6. *Id.* at 15.

7. *Id.* at 14 (quoting *Judd v. State,* 482 P.2d 273 at 278–79 (Alaska 1971)).