NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| GEORGE SHAYEN III, | Court of Appeals No. A-11137 |
| Appellant, | Trial Court No. 3AN-10-7789 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2474 — September 4, 2015 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Gregory A. Miller, Judge.

Appearances: Josie Garton, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER, writing for the Court.
Judge ALLARD, concurring.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

George Shayen III appeals his conviction for first-degree failure to register as a sex offender. To clarify, Shayen did in fact register as required. He was convicted under AS 11.56.840(a)(3)(B)(i) and AS 11.56.835(a)(1) for failing to provide written notice to the Department of Public Safety when he moved from the Brother Francis Shelter (an Anchorage shelter for the homeless) to an outdoor camping area near Ship Creek. *See* AS 12.63.010(c).

In this appeal, Shayen contends that AS 12.63.010(c) — the statute that requires sex offenders to notify the Department whenever they change their residence — is unconstitutionally vague as applied to homeless sex offenders. Shayen argues that because homeless people, by definition, have no fixed abode, the statute necessarily fails to give them adequate notice of when they must report a change of location.

It is true that the relevant chapter of the Alaska Statutes, AS 12.63, does not contain a definition of "residence". Nor is there any definition of "residence" in 13 AAC 09, the chapter of related regulations promulgated by the Department. (See, in particular, 13 AAC 09.900 — the section of definitions.)

We agree with Shayen that, without an explanation or clarification of how the term "residence" applies to homeless people, the provisions of AS 12.63 that require sex offenders to report any change of residence raise significant legal problems when they are applied to homeless sex offenders. But though this problem is real, the facts of Shayen's case do not require us to resolve it.

The testimony at Shayen's trial showed that Department of Public Safety employees — or, at least, the employees who dealt with Shayen — have adopted an *ad hoc* definition of "residence" that is tailored to the situation of homeless offenders. According to this testimony, the Department did not require homeless sex offenders to provide a residence address, but only to identify the place they were staying with as much detail as reasonably possible. For instance, if a sex offender was staying in a

homeless camp, the Department employee would require the offender to provide the location of the camp. And if a homeless sex offender did not know the exact physical location where they would be staying, the offender would be required to simply identify the zip code or area of town where they would likely be staying.

Turning to the specific facts of Shayen's case, the testimony reveals that, at various times in the past, the Department allowed Shayen to file change-of-residence forms that identified his residence as:

- "Brother Francis Shelter",
- "camping in trees by the Valley of the Moon [Park]", and
- "Bean's Café".

And when Shayen was living in rural villages — places where there were no formal street addresses — the Department accepted such descriptions as "three houses south from [the Post Office]" and "Paul Beebe's old house, 2nd from [the] road facing north".

We acknowledge that the Department of Public Safety has no regulation, nor even a formal written policy, that acknowledges and codifies this *ad hoc* approach that its employees have adopted toward the question of a homeless sex offender's "residence". And even if the Department did formalize this approach by regulation or written policy, we are not sure that this approach would resolve every difficulty involved in applying the "change-of-residence" reporting requirement to homeless sex offenders.

But Shayen was a beneficiary of this flexible approach: Department employees repeatedly demonstrated a willingness to accept a varying amount of specificity (or lack of specificity) when Shayen filed his residence reporting forms. And in the trial court, Shayen never asserted that he was confused or uncertain about what the Department employees required of him, or the kinds of descriptions they were willing to accept when he submitted his change-of-residence forms. Instead, Shayen's attorney

argued that Shayen should be acquitted because, as a general matter, it was impossible for *any* homeless person to have a "residence".

Thus, Shayen has failed to show that he personally was affected, or prejudiced in any manner, by the potential difficulties in defining the term "residence" as it applies to homeless sex offenders.

Shayen raises two other claims that are related to his argument that the term "residence" is unconstitutionally vague as applied to homeless sex offenders.

First, Shayen argues that the State presented insufficient evidence to prove the *mens rea* element of failure to report a change of address — *i.e.*, evidence sufficient to support a finding that Shayen was subjectively aware that he was required to report his move from the Brother Francis Shelter to the camping area near Ship Creek.

When we review a claim that the evidence presented at a criminal trial is insufficient to support the defendant's conviction, we view the evidence (and all reasonable inferences to be drawn from that evidence) in the light most favorable to upholding the verdict. The question is whether the evidence is "adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to [the defendant's] guilt." *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

(Shayen was convicted at a bench trial, and the Alaska Supreme Court has adopted a different terminology to describe an appellate court's "sufficiency of the evidence" review in the context of bench trials. See *Helmer v. State*, 608 P.2d 38, 39 (Alaska 1980), which describes the test as whether the court's verdict is supported by "substantial evidence". But the language of the *Helmer* opinion reveals that this "substantial evidence" test is the same test that an appellate court applies to jury verdicts. According to *Helmer*, the question is whether the verdict is supported by "such relevant evidence [as] is adequate to support a conclusion by a reasonable mind that there was no

reasonable doubt as to appellant's guilt", when all inferences are resolved in favor of the court's verdict. *Ibid.*)

To convict Shayen of failing to report his change of residence to the Department of Public Safety, the State had to prove that Shayen was aware of the circumstances that triggered his duty to report a change of residence, and that he knowingly refrained from performing that duty. [1] Shayen argues that the evidence at his trial was not sufficient to support a finding that he was aware that his move from the Brother Francis Shelter to the camping area near Ship Creek was an event that triggered his duty to report a change of residence.

But the State presented evidence that, one year previous, Shayen had signed a Department of Public Safety form ("Acknowledgment of Requirement and Duties") which explained that he was under a duty to report any change in "the physical location of [his] home or other place where [he was] living." The State also presented evidence that the Department had sent Shayen "courtesy reminder" letters, explaining that if he did not have a street address, he could provide the Department with a description of where he was living.

The State also presented evidence tending to prove that Shayen understood these requirements. On many occasions, Shayen submitted forms notifying the Department of a "change of residence" when he moved to a different location. Shayen submitted these forms even when his new location was not a traditional "address". For example, on one of these "change of residence" forms, Shayen reported that his residence was "camping in trees by the Valley of the Moon [Park]".

Based on this evidence, a reasonable mind could conclude that Shayen knew that his move from the Brother Francis Shelter to the camp at Ship Creek was a "change of residence" that he had to report.

---

[1] *See Dailey v. State*, 65 P.3d 891, 895-96 (Alaska App. 2003).

Shayen alternatively argues that even if the State offered sufficient evidence to support this finding of *mens rea*, the superior court's written findings in this case do not include an explicit finding on this element of the offense — *i.e.*, an express finding that Shayen was aware that his move from the Brother Francis Shelter to the camping area at Ship Creek constituted a "change of residence" that triggered his duty to report.

But when this case was litigated in the superior court, Shayen never asserted that he was unaware that he was required to report his move from the shelter to the camping area. Instead, as we noted earlier, Shayen argued that he should be acquitted because homeless people, by definition, never have an identifiable "residence" — and thus *no homeless person* could reasonably be on notice that they were required to report a change in their physical location.

Shayen never asserted — either in his testimony, or in his attorney's argument to the court — that he continued to view the Brother Francis Shelter as his "residence" even though he had moved to the camping area near Ship Creek, or that he failed to understand that moving from the shelter to the camping area was a change of location that had to be reported to the Department. And as we have explained, the State offered testimony that Shayen had previously submitted "change of residence" forms that documented similar changes of location (and these forms were accepted by the Department).

Because Shayen never put this element of the offense in dispute, and because (as we have just explained) the State presented ample evidence to prove this element, Shayen can not show that he was prejudiced by the superior court's failure to make an explicit finding on this element. Shayen has thus failed to prove plain error. [2]

---

[2] *See Dodds v. State*, 997 P.2d 536, 543 (Alaska App. 2000) (finding no plain error in a robbery prosecution where the judge failed to instruct the jury on the requirement of *corpus delicti*, when "the fact that the robbery occurred was not seriously disputed"); *see also*
(continued...)

There is one final matter that we must address: The judgement in this case declares that Shayen was convicted of a "crime of domestic violence" as defined in AS 18.66.990. The State concedes that this is incorrect, and we agree.[3] We therefore direct the superior court to amend the judgement to correct this error.

In all other respects, the judgement of the superior court is AFFIRMED.

---

[2]   (...continued)
*Charles v. State*, 287 P.3d 779, 783 (Alaska App. 2012) (noting that this Court has repeatedly held that a *Blakely* violation (*i.e.*, a failure to give the defendant a jury trial on a factor that would increase the defendant's potential maximum sentence) does not constitute plain error "when the evidence concerning the existence of the [aggravating factor] was not subject to reasonable dispute — in other words, when there was no reasonable possibility that a jury would have found in the defendant's favor even if the issue had been submitted to a jury").

[3]   *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess any concession of error by the State in a criminal case).

Judge ALLARD, concurring.

I agree with the Court's decision in this case. I write separately only to further address the due process concerns raised by the briefing in this case.

As the majority decision explains, the Department of Public Safety has informally adopted a flexible interpretation of the term "residence" when applied to homeless sex offenders. The record in this case also demonstrates that the Department often works informally with individual homeless sex offenders to assist them in understanding how to comply with their sex offender registration requirements.

For the most part, Shayen's case demonstrates the overall effectiveness of this practical, common-sense approach. Prior to the current prosecution, Shayen had a long history of compliance with his sex offender registration requirements, despite his almost continuous homeless status.

But Shayen's case also demonstrates some of the potential shortfalls of the Department's approach. Although the record indicates that many of Shayen's change of residence forms were filled out with the assistance of state employees, there is no documentation of what the employees told Shayen about what constituted a "residence" or a "change of residence" for a person in his circumstances. And (as the majority notes), the Department has, in the past, accepted a wide range of descriptions of Shayen's "residence." These range from "Brother Francis" to "Beans Café" to "camping in the Valley of the Moon" — and, in one instance, simply the word "homeless."

On appeal, Shayen's attorney argues that all of these descriptions probably meant the same thing to Shayen: they showed that he was homeless in Anchorage. Shayen's attorney further argues that, given that Shayen was still homeless when he moved from the Brother Francis Shelter to the camping area at Ship Creek, Shayen may have been genuinely and reasonably confused about whether his move constituted a

"change in residence" requiring him to update his registration form — particularly since the camp was less than a mile away from the shelter, and Shayen likely intended to return to the shelter when the weather turned bad.

I agree with the majority that this is not how Shayen's case was litigated in the trial court. Moreover, Shayen's testimony at trial suggested that he *was* aware that his move to the Ship Creek camping area required him to update his sex offender registration information — because he testified that he believed he had complied with this requirement by telling a police officer about the move. (I acknowledge that the trial judge expressly found that Shayen's testimony on this point was not credible. But the fact that Shayen thought he needed to make this kind of assertion in his testimony indicates that he knew he should have reported his move to the Ship Creek camping area.)

Nevertheless, I find that the due process concerns raised by Shayen's attorney in this case are valid.

By regulation, a sex offender "is considered to have changed residence on the date the offender leaves the residence without intending to return to continue living there, or the date that the offender has been away from the residence for 30 consecutive days, whichever occurs first."[1] The meaning of this regulation is unambiguous when applied to sex offenders with a traditional residence, but its meaning is less clear for homeless sex offenders.

The written materials that the Department provides to sex offenders likewise fail to address the circumstances of a person who lacks a traditional "residence." The majority points out that sex offenders receive "courtesy reminder" letters that inform them that if they do not have a street address, they may substitute a "descriptive address." But the example provided in those letters — "4th house on Main Street, across from the

---

[1] 13 AAC 09.040(b).

post office" — is aimed at rural residents, *i.e.*, individuals who live in houses with no street address, not individuals without a home.

I therefore encourage the Department of Public Safety to continue its common-sense approach toward the reporting requirements for homeless sex offenders, but to also consider how best to ensure that homeless sex offenders receive adequate notice of how these requirements apply to them.