OPINION
Judge MANNHEIMER,
writing for the Court.
George Shayen III appeals his conviction for first-degree failure to register as a sex offender. To clarify, Shayen did in fact register as required. He was convicted under AS 11.56.840(a)B)(B)(i) and AS 11.56.885(a)(1) for failing to provide written notice to the Department of Public Safety when he moved from the Brother Francis Shelter (an Anchorage shelter for the homeless) to an outdoor camping area near Ship Creek, See AS 12.68.010(c).
In this appeal, Shayen contends that AS 12.63.010(c)-the statute that requires sex offenders to notify the Department whenever they change their residence-is unconstitutionally vague as applied to homeless sex offenders. Shayen argues that because homeless people, by definition, have no fixed abode, the statute necessarily fails to give them adequate notice of when they must report a change of location.
It is true that the relevant chapter of the Alaska Statutes, AS 12.63, does not contain a definition of "residence". Nor is there any definition of "residence" in 18 AAC 09, the chapter of related regulations promulgated by the Department. (See, in particular, 18 AAC 09.900-the section of definitions.)
We agree with Shayen that, without an explanation or clarification of how the term "residence" applies to homeless people, the provisions of AS 12.68 that require sex offenders to report any change of residence raise significant legal problems when they are applied to homeless sex offenders, But though this problem is real, the facts of Shayen's case do not require us to resolve it.
The testimony at Shayen's trial showed that Department of Public Safety employ ees-or, at least, the employees who dealt with Shayen-have adopted an ad hoe definition of "residence" that is tailored to the situation of homeless offenders. According to this testimony, the Department did not require homeless sex offenders to provide a residence address, but only to identify the place they were staying with as much detail as reasonably possible. For instance, if a sex offender was staying in a homeless camp, the Department employee would require the offender to provide the location of the camp. And if a homeless sex offender did not know the exact physical location where they would be staying, the offender would be required to simply identify the zip code or area of town where they would likely be staying.
Turning to the specific facts of Shayen's case, the testimony reveals that, at various times in the past, the Department allowed Shayen to file annual registration and change-of-residence forms that identified his residence as:
e "Brother Francis Shelter",
e "camping in trees by the Valley of the Moon [Park]", and
e "Bean's Café".
And when Shayen was living in rural villages-places where there were no formal street addresses-the Department accepted such descriptions as "three houses south from [the Post Office]" and "Paul Beebe's old house, 2nd from [the] road facing north".
We acknowledge that the Department of Public Safety has no regulation, nor even a formal written policy, that acknowledges and codifies this ad Roe approach that its employees have adopted toward the question of a homeless sex offender's "residence". And even if the Department did formalize this approach by regulation or written policy, we are not sure that this approach would resolve every difficulty involved in applying the "change-of-residence" reporting requirement to homeless sex offenders.
But Shayen was a beneficiary of this flexible approach: Department employees repeatedly demonstrated a willingness to accept a varying amount of specificity (or lack of specificity) when Shayen filed his residence reporting forms,. And in the trial *535 court, Shayen never asserted that he was confused or uncertain about what the Department employees required of him, or the kinds of descriptions they were willing to accept when he submitted his change-of-residence forms. Instead, Shayen's attorney argued that Shayen should be acquitted because, as a general matter, it was impossible for amy homeless person to have a "residence".
Thus, Shayen has failed to show that he personally was affected, or prejudiced in any manner, by the potential difficulties in defining the term "residence" as it applies to homeless sex offenders.
Shayen raises two other claims that are related to his argument that the term "residence" is unconstitutionally vague as applied to homeless sex offenders.
First, Shayen argues that the State presented insufficient evidence to prove the mens req element of failure to report a change of address-i.e., evidence sufficient to support a finding that Shayen was subjec tively aware that, he was required to report his move from the Brother Francis Shelter to the camping area near Ship Creek.
When we review a claim that the evidence presented at a criminal trial is insufficient to support the defendant's conviection, we view the evidence (and all reasonable inferences to be drawn from that evidence) in the light most favorable to upholding the verdict. The question is whether the evi-denee is "adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to [the defendant's] guilt." Dorman v. State, 622 P.2d 448, 453 (Alaska 1981).
(Shayen was convicted at a bench trial, and the Alaska Supreme Court has adopted a different terminology to describe an appellate court's "sufficiency of the evidence" review in the context of bench trials. See Helmer v. State, 608 P.2d 38, 39 (Alaska 1980), which describes the test as whether the court's verdict is supported by "substantial evidence". But the language of the Hel-mer opinion reveals that this "substantial evidence" test is the same test that an appellate court applies to jury verdicts. According to Helmer, the question is whether the verdict is supported by "such relevant evi-denee [as] is adequate to support a conclusion by a -reasonable mind that there was no reasonable doubt as to appellant's guilt", when all inferences are fesolved in favor of the court's verdiet. Ibid.)
To convict Shayen of failing to report his change of residence to the Department of Public Safety, the State had to prove that Shayen was aware of the cireumstances that triggered his duty to report a change of residence, and that he knowingly refrained from performing that duty.[1] Shayen argues that the evidence at his trial was not suffi-clent to support a finding that he was aware that his move from the Brother Francis Shelter to the camping area near Ship Creek was an event that triggered his duty to report a change of residence. .
But the State presented evidence that, one year previous, Shayen had signed a Department of Public Safety form ("Acknowledgment of Requirement and Duties") which explained that he was under a duty to report any change in "the physical location of [his] home or other place where [he was} living." The State also presented evidence that the Department had sent Shayen "courtesy reminder" letters, explaining that if he did not have a street address, he could provide the Department with a description of where he was living.
The State also presented evidence tending to prove that Shayen understood these requirements. On many occasions, Shayen submitted forms notifying the Department of a "change of residence" when he moved to a different location. Shayen submitted these forms even when his new location was not a traditional "address", And on one of his registration forms, Shayen reported that his residence was "camping in trees by the Valley of the Moon [Park]".
Based on this evidence, a reasonable mind could conclude that Shayen knew that his move from the Brother Francis Shelter to the camp at Ship Creek was a "change of residence" that he had to report.
*536 Shayen alternatively argues that even if the State offered sufficient evidence to support this finding of mens rea, the superior court's written findings in this case do not include an explicit finding on this element of the offense-ie, an express finding that Shayen was aware that his move from the Brother Francis Shelter to the camping area at Ship Creek constituted a "change of residence" that triggered his duty to report.
But when this case was litigated in the superior court, Shayen never asserted that he was unaware that he was required to report his move from the shelter to the camping area. Instead, as we noted earlier, Shayen argued that he should be acquitted because homeless people, by definition, never have an identifiable "residence"-and thus mo homeless person could reasonably be on notice that they were required to report a change in their physical location.
Shayen never asserted-either in his testimony, or in his attorney's argument to the court-that he continued to view the Brother Francis Shelter as his "residence" even though he had moved to the camping area near Ship Creek, or that he failed to understand that moving from the shelter to the camping area was a change of location that had to be reported to the Department. And as we have explained, the State offered testimony that Shayen had previously submitted annual registration and "change of residence" forms that documented similar changes of location (and these forms were accepted by the Department).
Because Shayen never put this element of the offense in dispute, and because (as we have just explained) the State presented ample evidence to prove this element, Shayen can not show that he was prejudiced by the superior court's failure to make an explicit finding on this element. Shayen has thus failed to prove plain error.[2]
There is one final matter that we must address: The judgement in this case declares that Shayen was convicted of a "crime of domestic violence" as defined in AS 18.66.990. The State concedes that this is incorrect, and we agree.[3] We therefore direct the superior court to amend the judgement to correct this error.
In all other respects, the judgement of the superior court is AFFIRMED.
Judge ALLARD, concurring.

. See Dailey v. State, 65 P.3d 891, 895-96 (Alaska App.2003).

. See Dodds v. State, 997 P.2d 536, 543 (Alaska App.2000) (finding no plain error in a robbery prosecution where the judge failed to instruct the jury on the requirement of corpus delicti, when "'the fact that the robbery occurred was not seriously disputed"); see also Charles v. State, 287 P.3d 779, 783 (Alaska App.2012) (noting that this Court has repeatedly held that a Blakely violation (ie., a failure to give the defendant a jury trial on a factor that would increase the defendant's potential maximum sentence) does not constitute plain error "when the evidence concerning the existence of the [aggravating factor] was not subject to reasonable dispute-in other words, when there was no reasonable possibility that a jury would have found in the defendant's favor even if the issue had been submitted to a jury").

. See Marks v. State, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess any concession of error by the State in a criminal case).