Billie Rae DEEMER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9775.

Court of Appeals of Alaska.

Dec. 23, 2010.

Dan S. Bair, Assistant Public Advocate, Appeals & Statewide Defense Section, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Billie Rae Deemer was stopped by a state trooper for a traffic violation (failing to signal a turn). When the trooper asked Deemer to identify herself, she lied about her identity. A short time later, another trooper arrived on the scene who was acquainted with Deemer. The troopers then ran Deemer's name through their computer; this check revealed that there was a warrant for Deemer's arrest for failing to appear in a criminal case. Deemer was arrested, and the troopers searched her car. This search revealed a handgun and cocaine.

Based on these events, Deemer was convicted of fourth-degree misconduct involving a controlled substance (possession of cocaine), second-degree weapons misconduct (possession of a firearm in furtherance of a drug felony), third-degree weapons misconduct (possession of a concealable firearm by a felon), and giving false information to a police officer.

On appeal, Deemer asserts that the search of her car was unlawful.

In our previous decision in this case, *Deemer v. State,* Alaska App. Memorandum Opinion No. 5467 (April 8, 2009), 2009 WL 962822, we upheld the search of the car based on Alaska precedent governing searches of a motor vehicle pursuant to an arrest. Under that precedent, the police were authorized to conduct a search for both weapons and evidence within the area of the passenger compartment that was within Deemer's reach at the time of the stop—even though Deemer had already been secured in a trooper patrol car before the search began.[1]

But two weeks after we issued this decision, the United States Supreme Court issued its decision in *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant,* the Supreme Court altered federal search and seizure law relating to the search of a motor vehicle pursuant to an arrest: the Court held that the police can search the passenger compartment of the vehicle for weapons only if the search is conducted at a time "when the arrestee is unsecured and within reaching distance of the passenger compartment". 129 S.Ct. at 1719. In other words, a warrantless search of a vehicle for weapons is permissible only if there is a realistic possibility that the arrestee might grab a weapon from the vehicle.

The Supreme Court did not place this same "proximity of the arrestee" limitation on searches for evidence. Rather, the Court stated that "[the] circumstances unique to

---

1. *Wilburn v. State,* 816 P.2d 907, 912–13 (Alaska App.1991); *Dunn v. State,* 653 P.2d 1071, 1079– 1080 (Alaska App.1982).

the vehicle context justify a [warrantless] search [of a vehicle] incident to a lawful arrest when it is reasonable to believe [that] evidence relevant to the crime [on which the] arrest [is based] might be found in the vehicle." *Ibid.* However, the Court added that most traffic violations would not meet this standard. *Ibid.*

Based on the United States Supreme Court's decision in *Gant,* the Alaska Supreme Court directed us to reconsider Deemer's case.[2] We asked the parties to submit supplemental briefs discussing *Gant* and its application to the facts of Deemer's case. We have considered those briefs, and—for the reasons explained here—we again conclude that the search of Deemer's vehicle was lawful.

Because Deemer was sitting handcuffed in the back of a trooper patrol car at the time of the search, it is obvious that the search of Deemer's vehicle can not be justified as a search for weapons under the Fourth Amendment (as construed in *Gant* ). This leaves the question of whether the search of Deemer's vehicle can be justified as a search for evidence.

■ However, before we reach that question, we must address a preliminary issue raised by the State in its supplemental brief: Is Deemer entitled to suppression of the evidence against her if we conclude that the search of her vehicle violated the Fourth Amendment as construed by the Supreme Court in *Gant?*

In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that constitutional rulings are to be applied retroactively to all defendants, both federal and state, whose convictions are not yet final (*i.e.,* whose cases are still pending on direct review or certiorari review) when the new constitutional rule is announced. 479 U.S. at 323–24, 328, 107 S.Ct. at 713–14, 716.

The State concedes that Deemer's conviction was not yet final when the United States Supreme Court issued its decision in *Gant.*

(This Court had decided Deemer's appeal, but Deemer was still entitled to petition the Alaska Supreme Court to review this Court's decision.) However, the State argues that even though *Gant* applies retroactively to Deemer's case, Deemer would not be entitled to suppression of any evidence even if we concluded that the search of her vehicle violated *Gant.*

The State bases its argument on the decision of the Tenth Circuit in *United States v. McCane,* 573 F.3d 1037, 1045 (10th Cir.2009), and the decision of the Eleventh Circuit in *United States v. Davis,* 598 F.3d 1259, 1267–68 (11th Cir.2010). In *McCane* and *Davis,* the courts held that the exclusionary rule does not apply to searches that violate *Gant* if (1) the search was conducted before *Gant* was issued and (2) the police acted in good-faith reliance on pre-*Gant* case law.

The Ninth Circuit, on the other hand, takes the position that the exclusionary rule *does* apply even when the police relied in good faith on pre-*Gant* case law. *United States v. Gonzalez,* 578 F.3d 1130, 1132–33 (9th Cir.2009), *rehearing denied,* 598 F.3d 1095 (9th Cir.2010).

The *Gonzalez* court noted that the United States Supreme Court has never applied the good-faith exception to a situation where police officers relied on case law (even prior Supreme Court precedent) that was later determined by the Supreme Court to be inconsistent with constitutional guarantees. *Id.* at 1132. The *Gonzalez* court also concluded that if the good-faith exception were employed to defeat suppression claims based on *Gant,* this would undermine the whole notion that *Gant* should be applied retroactively to all defendants whose convictions were not yet final. *Ibid.* In other words, this use of the good-faith exception would conflict with the Supreme Court's holding in *Griffith v. Kentucky. Ibid.*

We agree with the Ninth Circuit. It strikes us as a strange sort of retroactivity to say that *Gant* governs the cases of all defendants whose convictions were not yet final

**2.** *See* "Order" issued on August 14, 2009 in *Deemer v. State,* Supreme Court File No. S–13505. In this order, the supreme court granted

Deemer's petition for hearing and remanded Deemer's case to this Court for reconsideration in light of *Arizona v. Gant.*

when *Gant* was decided, but in the same breath to tell these defendants that they have no remedy if they or their belongings were subjected to searches that violated *Gant*, as long as the police complied with pre-*Gant* law.

The courts of Alaska have not yet decided whether to adopt a good-faith exception to the exclusionary rule.[3] However, even assuming that Alaska law should recognize a good-faith exception, we hold that this exception would not apply to the situation presented here: an attempt to circumvent the retroactive application of *Gant* that is mandated by *Griffith v. Kentucky*.

*Why we conclude that the search of Deemer's vehicle—more specifically, the search of Deemer's coat lying on the back seat of the vehicle—was lawful under Gant*

■ As we explained above, *Gant* re-affirmed the doctrine that the police have the authority to search a vehicle incident to an arrest if they have a reasonable belief that evidence relevant to "the crime of arrest" might be found in the vehicle. 129 S.Ct. at 1719.

Although the Supreme Court's language might be read narrowly, as referring solely to evidence of the crime that the police announce to be the basis for the suspect's arrest, we believe that this phrase means something broader: it refers to evidence of *any* crime for which the police already have probable cause to make an arrest.

■ Alaska has long restricted searches incident to arrest to searches for weapons and for fruits, instrumentalities, or other evidence of the crime for which the suspect was arrested.[4] But as we explained in *Baxter v. State*, 77 P.3d 19 (Alaska App.2003), the true limitation under Alaska law is that the search must be for evidence of a crime for which the police already have probable cause to make an arrest—not necessarily the particular crime that the police announce as the basis for the arrest. *Id.* at 26.

■ This interpretation of the law follows from the principle that the propriety of an arrest or a warrantless search is assessed under an objective evaluation of the facts known to the police, rather than on the arresting officer's subjective belief or understanding as to why the arrest or the search is justified.[5] The Fourth Amendment is not violated when the arresting officer is unable to correctly articulate the basis for the arrest or the search. Rather, the Fourth Amendment is violated when the arrest or the search is unreasonable under the facts known to the police.

■ In Deemer's case, even though the troopers told Deemer that they were arresting her under the authority of a pre-existing warrant that was issued when she failed to appear on other criminal charges, the troopers at the same time had probable cause to believe that Deemer had just committed the offense of falsely identifying herself to them while she was being detained for investigation of a crime.[6]

Deemer in fact concedes (in her supplemental brief) that "[a]t the time [the troopers conducted] the search [of her vehicle], Ms. Deemer could have been ... charged with providing false information ..., a class A misdemeanor." Deemer argues, however, that the police had insufficient justification to conduct a search of Deemer's vehicle for evidence of this crime.

■ As we noted in our prior decision, Alaska law requires motorists to have their

---

3. See *Jackson v. State*, 926 P.2d 1180, 1184 n. 1 (Alaska App.1996) ("Given our disposition of this case, we need not reach the issue[] of whether Alaska should recognize a 'good faith' exception to the exclusionary rule[.]"); *Cabral v. State*, unpublished, Alaska App. Memorandum Opinion No. 5290 (January 9, 2008), 2008 WL 110493 at *13 ("The Alaska appellate courts have never decided whether to adopt [the good-faith] exception to the exclusionary rule.").

4. See *McCoy v. State*, 491 P.2d 127, 137–38 (Alaska 1971).

5. See *Bertilson v. State*, 64 P.3d 180, 185 (Alaska App.2003); *Snider v. State*, 958 P.2d 1114, 1117–18 (Alaska App.1998); *Beauvois v. State*, 837 P.2d 1118, 1121–22 n. 1 (Alaska App.1992); *State v. Kendall*, 794 P.2d 114, 116–17 (Alaska App.1990).

6. AS 11.56.800(a)(1)(B)(i).

driver's license in their possession.[7] Although Deemer told the troopers that she had no identification with her, the troopers could reasonably assume that Deemer, having decided to lie to them about her true identity, would also attempt to conceal the fact that her vehicle contained documentary proof of her lie. Given these circumstances, the troopers had sufficient reason to believe (under *Gant*) that Deemer's vehicle contained evidence of her crime of falsely identifying herself.[8]

■ Deemer argues in the alternative that, even if the troopers had reason to believe that Deemer's vehicle contained her driver's license or other evidence of her true identity, the troopers' interest in securing this evidence was so slight that it was outweighed by Deemer's privacy interest in the passenger compartment of her vehicle.

In particular, Deemer points out that the troopers already had enough information to charge her with the crime of falsely identifying herself—because one of the troopers on the scene was personally acquainted with Deemer, and identified her. Deemer argues that because it was not strictly necessary for the troopers to obtain her driver's license (or any other physical evidence) in order to establish who she was, we should invalidate the search of Deemer's vehicle on policy grounds.

Deemer points out that physical evidence of a person's identity is often quite small. Such evidence might be carried, contained, or found lying in almost any part of the passenger compartment or trunk of a vehicle. Deemer argues that allowing the police to search for physical evidence of a motorist's identity is tantamount to giving the police *carte blanche* authority to search the entire vehicle—even to the point of dismantling panels and seats.

There is very little case law that directly addresses the question of whether, or how intrusively, the police may conduct a search for physical evidence of a person's identity. No prior Alaska case has dealt with the search of a vehicle for evidence of a motor-

ist's identity, although a few Alaska cases have addressed searches of a *person* for evidence of their identity. For example, in *Harris v. State*, unpublished, Alaska App. Memorandum Opinion No. 1355 (March 11, 1987), 1987 WL 1359274 at *1, this Court concluded that the police were justified in conducting a pat-down search of the defendant's person for identification (*i.e.,* patting the defendant's clothing and removing objects from the defendant's pockets) where the police already had probable cause to arrest the defendant, and the defendant had given them a false name and had not produced a driver's license.

This Court's most extensive discussion of this issue is found in *Stephens v. State*, 698 P.2d 664 (Alaska App.1985). The defendant in *Stephens* was arrested and brought to the police station. *Ibid.* There, he refused to identify himself—and, consequently, a police officer searched the defendant's pockets for identification documents or other evidence of his identity. 698 P.2d at 664–65.

This Court held that the search was proper under those facts, but we suggested that such searches should only be allowed in limited circumstances. *Id.* at 666. We acknowledged that if the police were given broad authority to conduct searches for physical evidence of a person's identity, there was a real danger that the police would use this authority as a pretext to perform warrantless searches for contraband or for evidence of other crimes for which the police did not yet have probable cause to make an arrest. *Ibid.*

In footnote 2 of the *Stephens* opinion, this Court discussed the appropriate scope of searches for evidence of identity. We noted that Professor LaFave, in his treatise on the law of search and seizure, advocated fairly strict limitations on identification searches that are conducted incident to an investigative stop. According to Professor LaFave,

> such searches should be limited ... to wallets or similar common repositories of

---

7. AS 28.15.131.

8. *Accord, Armstead v. Commonwealth,* 56 Va.App. 569, 695 S.E.2d 561, 565 (2010); *but see United*

*States v. Davis,* 598 F.3d 1259, 1261 (11th Cir. 2010).

identification papers, and examination of such containers should be allowed *only* to the extent necessary to find a driver's license or similar document. And if the precise location of the wallet or like container is not known, *only* a frisk should be allowed as a means of discovering it.

*Stephens,* 698 P.2d at 666 n. 2, quoting Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (1st ed. 1978 & Supp.1985), § 9.4(g), Vol. 3, p. 94 (emphasis in the original).

Having acknowledged Professor LaFave's views, this Court declared that we "decline[d] to adopt Professor LaFave's recommendation in total, at least where the suspect has been subjected to a full custodial arrest [as opposed to an investigative stop]." *Ibid.* However, we then endorsed LaFave's comments as "a useful guide in keeping searches for identification suitably narrow":

> If an arrestee cannot be identified, and, after being given a full opportunity to identify himself[,] refuses to identify himself, [a search for identification is authorized, but] the search ... must be narrow and reasonable. We assume that in most cases the police can identify a suspect by patting him down to see if he has a wallet or similar "common repository of identification papers" and looking inside that item only to the extent necessary to find identification.

*Ibid.*

Deemer's case is factually distinct from *Stephens* in three pertinent respects. First, Deemer did not "refuse to identify herself"; instead, she affirmatively identified herself with a false name. Second, Deemer's case is not an instance where an arrestee "could not be identified"; rather, Deemer was identified by an officer on the scene, and she was arrested on a pre-existing warrant based on that officer's knowledge of her true identity. Third (and finally), the troopers' justification for seeking physical evidence of Deemer's identity was not to try to establish her identity, but rather to try to obtain corroborating evidence that she had just committed a crime—the offense of falsely identifying herself when she was being investigated or arrested for a separate crime.

One of the few cases addressing the proper scope of a search for identification in similar circumstances is *In re Arturo D.,* 27 Cal.4th 60, 115 Cal.Rptr.2d 581, 38 P.3d 433 (2002). The defendant in *Arturo D.* was stopped for a traffic violation and then failed to provide personal identification or vehicle registration documentation (both being required by California law). *Id.* at 436. The California Supreme Court held that, in this situation, the police were justified in conducting a warrantless search of the passenger compartment of the vehicle for the driver's identification and the vehicle registration. *Id.* at 445–46.

The California court declared that the permissible scope of this search was anywhere in the vehicle where identification or vehicle registration "reasonably may be expected to be found." *Id.* at 446. Citing Professor LaFave, the court also declared that the police were not required to credit the defendant's assertion that he had no driver's license. *Id.* at 445–46, citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (4th ed.2004), § 7.4(d), Vol. 3, pp. 663 ("[I]f the driver has been given an opportunity to produce proof of registration but he is unable to do so, and even if he asserts that there is no such proof inside the car, the officer is not required to accept such an assertion at face value ... [but] may look for registration papers on the dashboard, sun visor[,] and steering column and, if not found in those places or seen in plain view, in the glove compartment [or other] places where [the registration] may reasonably be found.").

The California court also cited a long list of cases where courts upheld the discovery and seizure of wallets from beneath the front seats of vehicles when the police had a proper justification for searching for the driver's identification. *Arturo D.,* 115 Cal.Rptr.2d 581, 38 P.3d at 446–47, 451.

Given the facts of Deemer's case, we need not decide whether to endorse the California Supreme Court's holding that, whenever a motorist is validly stopped for a traffic violation and then fails to produce their driver's license and/or their vehicle registration as required by law, a search for that documentation can be conducted anywhere within the

vehicle where a driver's license or vehicle registration "reasonably may be expected to be found". Rather, Deemer's case can be resolved under a more modest rule:

■ When the police have probable cause to believe that physical evidence of a driver's identity is evidence of an independent crime (*i.e.*, a crime other than failing to carry or produce the documentation required of motorists), the police can search the places and articles within the passenger compartment where one would reasonably expect to find that evidence.

In Deemer's case, her coat was lying on the back seat of the car, and it was reasonable to suppose that Deemer's driver's license (or other physical evidence of her identity) might be found in the pockets of her coat. Accordingly, the search of Deemer's coat for this evidence was lawful.

We express no opinion as to potential alternative justifications for the search conducted in Deemer's case, and no opinion as to whether that search might justifiably have had a greater scope.

In our previous decision, we concluded that, "given the lawfulness of this search [of the coat] for evidence of Deemer's identity, the permitted scope and intensity of this search would uncover the baggies of cocaine [in the pockets of the coat]." *Deemer*, 2009 WL 962822 at *3. Deemer has not asked us to re-examine that conclusion.

Deemer's coat contained over 33 grams of cocaine, with a street value of approximately $3,300. In addition, the coat contained a small electronic scale, several syringes, a couple of small spoons, and tiny plastic bags with cocaine residue in them. Based on Deemer's possession of this sizeable amount of cocaine plus the related drug paraphernalia, the troopers could reasonably suspect Deemer of possessing cocaine for purposes of sale, and they could enlarge the scope of their search to include additional evidence relating to this drug offense—including weapons. See AS 11.61.200(a)(1), which makes it a crime to possess a firearm in furtherance of a drug felony. Thus, the police validly discovered and seized the handgun from underneath the front seat of Deemer's vehicle.

*Conclusion*

For the reasons explained here, we conclude that the search of Deemer's vehicle, and the ensuing discovery and seizure of the cocaine and the handgun, were lawful under the Fourth Amendment as construed in *Arizona v. Gant*. Accordingly, we again AFFIRM the judgement of the superior court.